**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 13** |
| | ) | |
| **Patricia D. Fenderson,** | ) | **Case No. 07-71222** |
| | ) | |
| **Debtor.** | ) | **United States Trustee's Motion to** |
| | ) | **Dismiss Case with Prejudice and** |
| | ) | **to Bar Future Filings** |
| | ) | |

___

## MEMORANDUM DECISION

The matter before the Court is the United States Trustee's Motion to Dismiss Case with Prejudice and to Bar Future Filings. This matter was heard by the Court on September 10, 2007 and was taken under advisement. After due consideration of the relevant facts and the arguments of counsel, the Court, for the reasons noted below, concludes that the United States Trustee's Motion to Dismiss Case with Prejudice and to Bar Future Filings should be granted in part.

### FINDINGS OF FACT

Patricia D. Fenderson, the Debtor, has been a debtor in numerous cases that have come before this Court, so a review of her bankruptcy case history is necessary.

On April 22, 1997 Ms. Fenderson filed her first bankruptcy petition as a joint-debtor with her ex-husband, Robert D. Fenderson, under chapter 7, which was assigned Case Number 97-01544. The Debtors paid their filing fee and received a discharge of their debts on August 29, 1997. An Order of Final Decree was entered in that case on November 21, 1997.

On August 12, 2003 Ms. Fenderson filed her first petition under chapter 13 of the

Code, which was assigned Case Number 03-03434, and paid her filing fee. She filed a Plan on August 26, 2003, an amended Plan on October 12, 2003 and a Second Amended Plan on December 10, 2003, which was confirmed on February 12, 2004. This case was dismissed on June 15, 2004 on a motion by the Debtor and ultimately closed on December 8, 2004.

On June 17, 2004, two days after the dismissal of Case Number 03-03434, Ms. Fenderson filed a second petition by counsel under chapter 13, which was given Case Number 04-02578, and paid her filing fee. A chapter 13 Plan was filed on July 16, 2004, but the case was dismissed without prejudice on September 13, 2004 upon the motion of the chapter 13 Trustee and the case was closed on November 10, 2004.

The day following the Order dismissing Case Number 04-02578, September 14, 2004, Ms. Fenderson filed a pro se petition under chapter 13, which was given Case Number 04-03797. Ms. Fenderson filed a Motion for Extension of Time to pay the filing fee on the same date as her petition, but did not file a plan or her schedules, so an Order of filing deficiency was docketed on September 17, 2004. When this deficiency was not cured within fifteen days, and before Ms. Fenderson paid her filing fee, the case was dismissed by an Order dated October 6, 2004. The case was closed on December 29, 2004.

Ms. Fenderson's fifth bankruptcy case, which was her fourth under chapter 13, was filed pro se on October 20, 2004, together with the requisite filing fee, just two weeks after the dismissal of her preceding case, and assigned Case Number 04-74278. A chapter 13 Plan and Schedules A through J were filed on October 29, 2004, but the case was converted to chapter 7, by an Order of the Court dated December 7, 2004, upon an oral motion made by Ms. Fenderson at a hearing on December 6, 2004. After paying her conversion fee on December 17, 2004, Ms. Fenderson received a discharge on January 9, 2006 and her case was closed the same

2

day.

Ms. Fenderson filed a sixth petition on July 25, 2006, her fifth under chapter 13, and it was assigned Case Number 06-70804. The same day Ms. Fenderson filed an Application to Defer Case Filing Fee, which stated that she was unable to pay the $274 filing fee and requested that she be permitted to pay it in installments. This request was granted the next day. Also entered on July 26th was an Order of deficiency for unfiled schedules and B22 means calculation test and a separate Order showing a deficiency of certification that the debtor received pre-petition credit counseling. The United States Trustee's Office filed an adversary proceeding against Ms. Fenderson on August 1, 2006, given Adversary Proceeding Number 06-07089, arguing that because she received a discharge under chapter 7 within the preceding four years, Ms. Fenderson was not entitled to receive a discharge in this case and requested dismissal. The following day another Order of deficiency was entered, this one regarding a deficiency in the mailing matrix and for the additional twenty six dollar filing fee resulting from the failure to file such matrix contemporaneously with the petition, which would cause the case's dismissal if not cured within ten days. The case was ultimately dismissed on August 15, 2006 for Ms. Fenderson's failure to comply with the Court's deficiency orders and the adversary proceeding was never litigated.

On February 8, 2007, Ms. Fenderson filed her seventh petition, this one again under chapter 13, which was assigned Case Number 07-70209. Contemporaneous with filing her petition, Ms. Fenderson filed an application to defer the case filing fee, which certified that she was unable to pay the fee at that time and had not transferred money or property for services in connection with the case and stated that she understood the failure to pay the filing fee within thirty days of the first meeting of the creditors would result in dismissal of the case. The

3

following day the Court granted the application and also issued an order declaring Ms. Fenderson in default of filing her schedules, the means calculation test, and a certification of pre-petition credit counseling.  The United States Trustee's Office filed an adversary proceeding against Ms. Fenderson on February 23, 2007, given Adversary Proceeding Number 07-07019, on the grounds that Ms. Fenderson had received a discharge under chapter 7 in the previous four years, and therefore was not entitled to a discharge in the current case pursuant to 11 U.S.C. § 1328(f)(1).  This case was dismissed on February 27, 2007 before the adversary proceeding could be heard because Ms. Fenderson did not comply with the Court's Order requiring her to file her schedules.  The adversary proceeding was closed on March 20, 2007, the case was closed on April 24, 2007, and the Trustee's Final Report and Account shows that the debtor paid nothing to the trustee.

    Ms. Fenderson filed an eighth voluntary petition, her seventh under chapter 13, on April 13, 2007, which was given Case Number 07-70590.  Again, she filed an Application to Pay Filing Fee in Installments at the same time as her petition.  On April 17, 2007, the Court issued an Order that directed Ms. Fenderson to pay the full amount of the filing fee, $235, by June 18, 2007.  On the same day, the Court issued an Order of deficiency of schedules, which showed that the Debtor had again failed to file her schedules, the means test calculation, and a certification of pre-petition credit counseling and ordered the Debtor to file these documents by April 30, 2007.  On April 24, 2007, the chapter 13 Trustee filed a Motion to Dismiss the Case With Prejudice and asked that the Court dismiss the present case and enter an order prohibiting Ms. Fenderson from filing a new case for twelve months.  The Trustee stated in her motion that Ms. Fenderson had filed seven chapter 13 cases in the previous four years and the only disbursements made were attorney's fees.  Furthermore, Ms. Fenderson did not even file a plan in four of the seven cases

4

and had only obtained confirmation of a plan in one of those cases.[1] Therefore, it was asserted the Debtor's use of the protection of the Bankruptcy Code without complying with the necessary procedural requirements constituted an abuse of the Code and the case should be dismissed with a prohibition on filing a new case with the court for twelve months.

A hearing on the Trustee's motion was scheduled to be held on May 7, 2007, to which the Debtor filed a Motion to Continue the hearing. Ms. Fenderson did not appear at the hearing. In her Motion to Continue she offered no reason why she could not attend the hearing and on May 10, 2007 her Motion to Continue was denied and the Trustee's motion for dismissal with restrictions on filing for twelve months was granted. In response, Ms. Fenderson filed a Motion to Rehear on May 11, 2007 and asked that the Court reconsider its granting of the Trustee's motion to dismiss. On May 16, 2007, Ms. Fenderson filed a Motion to Quash Termination of Electrical Services because Appalachian Power was scheduled to turn off the Debtor's electrical services on May 17, 2007 and the hearing on her Motion to Rehear was not scheduled until June 4, 2007. At the hearing on June 4, 2007, Ms. Fenderson stated that she did not notice her Motion to Rehear to all of her creditors because she did not know that she needed to do so. Therefore, the Court allowed her to continue the Motion to Rehear and the Motion to Quash Termination of Electrical Services until July 9, 2007 so she could notice all of her creditors of the hearing. The Court specifically told Ms. Fenderson that the automatic stay was not in effect due to the dismissal and told her she could not tell her creditors she was in a chapter

---

[1] Ms. Fenderson filed chapter 13 Plans in Case Numbers 03-03434, 04-02578, and 04-74278. The plan filed in Case Number 03-03434, in which she was represented by counsel, was confirmed by the Court. In Case Number 04-02578, in which Ms. Fenderson was represented by counsel, Ms. Fenderson's plan was not confirmed before the case was dismissed. In the third of these cases, Case Number 04-74278, in which she was acting pro se, Ms. Fenderson filed a plan, but the case was converted to a chapter 7 before the plan's confirmation.

13 case because it was previously dismissed. On June 2, 2007, Ms. Fenderson filed a Motion to Quash Eviction in which she stated that she had filed a case under chapter 13, was subject to eviction, and pursuant to § 362(a) of the Code requested that the eviction be quashed.

At the hearing on July 9, 2007, Ms. Fenderson testified, but presented no evidence as to why the case should be reinstated because she declared the evidence was locked in her car that had been repossessed. She claimed that she had a job, contingent on the stay being granted, and that she had earned $500 in May and $1,000 in July. At that hearing the Court expressly advised Ms. Fenderson that any new filing after the expiration of the restriction period must be made in full compliance with all bankruptcy requirements, that she must have actual regular income to make a repayment plan possible, and that as a result of her filing history no automatic stay would be in effect unless and until she offered persuasive evidence to overcome a presumption that her case was filed in bad faith. Then, the Court denied her motion, but lessened the time restriction on filing a new petition from twelve months to ninety days. Therefore, the Court entered an Order denying Ms. Fenderson's Motion to Rehear and Motion to Quash Termination of Electrical Services and striking the Motion to Quash Eviction on the ground of mootness. The Trustee's Final Report and Account filed on July 30, 2007 showed nothing paid into the Trustee and no money paid out.

The present case was filed under chapter 13 on August 9, 2007, which was the first day that Ms. Fenderson could file after the ninety-day restriction passed. Contemporaneous with filing the petition, Ms. Fenderson filed a chapter 13 Plan and Motion to Quash Repossession of a 2000 Dodge Intrepid. The following day, August 10, 2007, an Order of deficiency of schedules was filed showing a deficiency in her schedules and confirmation of pre-petition credit counseling. Also on August 10, 2007, the Court issued an Order that showed Ms.

Fenderson was deficient in paying the $235 filing fee and an administrative fee in the amount of thirty nine dollars.

On the same day, the chapter 13 Trustee filed a Motion to Dismiss the Case with Prejudice and the United States Trustee filed a Motion to Dismiss the Case with Prejudice. The Trustee and United States Trustee's motions discuss Ms. Fenderson's history of bankruptcy filings, inadequate disclosures and failure to pay fees and ask for dismissal of the current case with a restriction of refiling for a period of twelve months and one year, respectively. Additionally, the chapter 13 Trustee requested that any future filing be conditioned on the Debtor paying all outstanding filing fees and requiring any new petition to be filed by counsel of record. The United States Trustee asked that any future filing by this Debtor that is filed within three years not receive the benefit of the automatic stay unless a motion is filed and it is established that the filing be in good faith and that all successive filings be conditioned on payment of the filing fees owed to the United States Bankruptcy Court.

On August 22, 2007, Ms. Fenderson filed the remainder of her schedules and an Application to Pay Filing Fee in Installments that requested she be granted leave to pay the filing fee in equal installments from September through December 2007. The Application was granted on the same day. On September 10, 2007, this Court heard the United States Trustee's Motion to Dismiss with Prejudice during which Ms. Fenderson testified. In her testimony, she said that she received pre-petition credit counseling for her own personal records, but it was not from an approved agency and that, although she filed a Motion to Quash the repossession of her car at the same time she filed her petition, the repossession was not the motivating factor in filing the present case. Instead, Ms. Fenderson testified that she filed the present case because she received a bill from the Internal Revenue Service for back taxes. Ms. Fenderson also testified that she had

7

no earned income in 2007 until she became self-employed in August. That month, Ms. Fenderson testified she had approximately $1,500 in income from her own business, as well as child support payments. This testimony is consistent with her schedules. Ms. Fenderson's Schedule I claims $1,440 in monthly wages, salary, and commissions, but her Statement of Financial Affairs indicates that she had no income from employment and the operation of her business during the current calender year or in the two years preceding.

As evidence of her good faith, Ms. Fenderson presented to the Court at the hearing a money order in the amount of $100. Despite testifying that she had substantial income for the month of August, the money order was from her grandfather payable to Ms. Fenderson under her maiden name, Patricia Viney, and apparently was not proceeds of purported earned income from her own efforts. At such hearing the Court took judicial notice of the fact that Ms. Fenderson failed to file Exhibit D[2] and noted Ms. Fenderson's admission in her testimony that she knew that she had not received credit counseling from an approved agency, which was sufficient cause for her latest case to be dismissed, but took under advisement the issue of what sanctions and/or restrictions upon refiling were appropriate to enter in this case.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District

---

[2] Exhibit D is the Debtor's Statement of Compliance with Credit Counseling Requirement, which certifies that a debtor received credit counseling from an approved agency within 180 days before filing the bankruptcy petition or was unable to obtain the services by exigent circumstances, and therefore satisfies the requirement contained in 11 U.S.C. § 109(h)(1).

Court on July 24, 1984. The determination of a motion to dismiss a case with or without prejudice and with or without limitations upon the filing of a new case or to impose other sanctions by reason of a filing in bad faith are "core" bankruptcy matters pursuant to 28 U.S.C. § 157(b) because they are inherent in the jurisdiction to entertain a bankruptcy case in the first place and such actions are expressly contemplated in sections 105 and 349(a) of the Bankruptcy Code.

11 U.S.C. § 109(g)(1) provides that a debtor whose case has been dismissed by the court "for willful failure . . . to abide by orders of the court" is not eligible to file another bankruptcy case for a period of 180 days. Additionally, 11 U.S.C. § 349(a) permits bankruptcy courts to dismiss a debtor's case with prejudice, which means a bar against the debtor obtaining a discharge in a subsequent case for debts included in the case being dismissed. In *Colonial Auto Center v. Tomlin (In re Tomlin)*, 105 F.3d 933 (4th Cir. 1997), Judge Motz discussed § 349(a) and stated

> that § 349 was never intended to limit the bankruptcy court's ability to impose a permanent bar to discharge that would have res judicata effect. Rather the language of § 349, as amended, "seems to make clear that the court has the power to order" such a sanction "in circumstances other than those dealt with by new § 109(g)."

*Id*. at 938 (citing Michael T. Andrew, *Real Property Transactions and the 1984 Bankruptcy Code Amendments*, 20 Real Prop. Prob. & Tr. J. 47, 72 n.107 (1985)). This Court has previously held that the *Tomlin* case "suggests that Congress intended § 349(a) to grant the bankruptcy court broad discretion to deal with serial filers in situations not specifically covered by § 109(g), either by barring a discharge or limiting a debtor's right to file new petitions." *In re Goodman*, No. 7-03-01138, slip op. at 4-5 (Bankr. W.D. Va. July 25, 2003). In *Goodman* this Court barred the debtor from filing a chapter 11, 12, or 13 case in any bankruptcy court for a period of twelve months.

9

Other bankruptcy courts have held that they have the power to and often have restricted debtors from filing future petitions for more than the 180 day period specifically provided for in 11 U.S.C. § 109. *See In re Robertson*, 206 B.R. 826, 829-31 (Bankr. E.D. Va 1996) (granting motion to dismiss the debtor's third chapter 13 case and restricting a refiling for 417 days); *Shearson Lehman Hutton Mortgage Corp. v. Hundley (In re Hundley)*, 103 B.R. 768, 771 (Bankr. E.D. Va. 1989) (dismissing the case and enjoining the debtor from filing another petition for one year). In addition to extending the 180 day time limit for refiling, courts have placed other restrictions on refiling cases. For example, in *In re Weaver*, 222 B.R. 521 (Bankr. E.D. Va. 1998), the court had forbidden the debtor from refiling a case for one year and found that the debtor's conduct was so egregious in the pending case that it ordered a permanent denial of discharge and further ordered that the debtor would not have the benefit of the automatic stay in all future filings with respect to one creditor who was particularly prejudiced. *Id*. at 524.

This Court, therefore, has the authority to restrict a debtor's future filings past the 180 day limit and "[i]t is ultimately up to the court[']s discretion to decide if the length of time requested by the movant is appropriate." *Robertson*, 206 B.R. at 830. A review of this Debtor's history in this Court shows that a restriction on any subsequent refiling by this Debtor is appropriate. Since 2003, this Debtor has filed eight petitions in this Court, which total doesn't include her initial case filing with her husband in 1997. All filings since 2003 have been chapter 13 cases and, excepting only one case, which was converted to chapter 7 and a discharge was obtained, all of them have been dismissed. There have only been four cases in which the Debtor has filed a plan, and only one of those plans, a case which she was represented by counsel, was confirmed by the Court. The Debtor has failed to pay the $235 filing fee in any of her last four cases. Although Ms. Fenderson has filed a plan and schedules in the present case, she has

10

consistently failed to file her schedules and abide by court orders throughout her bankruptcy history. In the present case, the Debtor has failed to receive pre-petition credit counseling from an approved agency, which has been a requirement since the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") took effect on October 17, 2005, an omission which has been a deficiency in her last four cases, but which she still failed to remedy before filing the present petition. When taking all of these circumstances, failures and the Debtor's bankruptcy history into account, the Court finds that her case ought to be dismissed with a restriction upon refiling for the requested period of twelve months because Ms. Fenderson, rather than taking to heart the Court's explicit statements to her about what would be necessary for her to file and prosecute a successful bankruptcy case at the time it reduced to ninety days the restriction period upon refiling imposed upon her in connection with the dismissal of her immediately preceding case, took advantage of the Court's leniency to her and filed a new case, again defective from its very commencement, on the very first day following the expiration of the period during which any new filing was absolutely precluded. Therefore, according to the facts and authorities cited, this Court determines that the Debtor, Patricia Fenderson, will be barred from filing any bankruptcy petition in any United States bankruptcy court for a period of twelve months following the date that the order of dismissal in this case becomes final.

      Now the Court will address whether it may restrict a debtor's future filings on the condition she pay the fees owed the Court from previous bankruptcy cases. In another recently decided case,[3] the United States Trustee also sought dismissal of the case with a restriction upon refiling and the imposition, as a sanction, of a requirement that, prior to, or contemporaneously

---

[3] *In re Witt*, Case No. 07-71224 (Bankr. W.D. Va. Oct. 23, 2007).

11

with, the filing of any subsequent bankruptcy petition after the expiration of the period during which any new filing would be absolutely precluded, the Debtor would be obliged to pay not only the filing fee associated with any new filing but also the unpaid filing fees associated with previous filings.  At the Court's request, counsel for the United States Trustee filed a brief in that case supporting the imposition of such a filing fee sanction.  The chapter 13 Trustee also filed a brief on such issue, which contended that the Court ought to declare that any unpaid filing fees would be non-dischargeable in any subsequent filing, but did not assert that the Court ought to require the pre-payment of all such unpaid fees as a condition of any permitted later filing.

        The United States Trustee in his brief cites just one case in which the filing fee sanction sought in this case was actually imposed by another bankruptcy court.  That case is *In re Sekendur*, 334 B.R. 609 (Bankr. N.D. Ill. 2005), which involved a debtor who was engaged in patent litigation in a non-bankruptcy court and would file a bankruptcy petition when rulings in that court went against him.  The court made a finding that multiple bankruptcy cases were filed in bad faith.  The debtor in that case had filed schedules which failed to include as an asset the very patent rights which he was litigating.  He did disclose a $155,000 retirement fund which was exempt from creditors under applicable non-bankruptcy law even though he had access to such account.  Although Mr. Sekendur could tap this account for funds if he chose to do so, he was so bold as to not only fail to pay his bankruptcy case filing fees, but also to petition the court to waive such fees on the ground of his financial inability to pay them.  The court's reaction to these tactics may be inferred from its parenthetical comment, "Some 'pauper!'"  *Id*. at 619.  On these facts the court declared:

> Sekendur's continued and unjustified failure to pay his filing fees still
> due in this case and to become due in any new case fully warrants the
> Order entered dismissing his bankruptcy case in part for failure to pay

> fees, and conditioning refiling in part on tender of all fees due in this case and required in any new case.

*Id.* at 620. Under the facts determined by the Court the debtor had the financial ability to pay the filing fees but evaded his responsibility to do so. This Court is not persuaded that *Sekendur* should be expanded beyond the exceptional facts upon which it was decided. Its language does not contain any indication that the Court would have imposed the filing fee payment sanction even if the debtor had not possessed the clear financial ability to pay such fees. This Court's reluctance to make the *Sekendur* sanction a standard procedure in dealing with serial filers is based on the following reasons:

    1. While the undersigned judge as a personal matter agrees with the United States Trustee that serial filers who demonstrate no concern about paying filing fees on the repeated cases they file abuse the bankruptcy system and are an annoying problem, Congress has not seen fit to make the payment of unpaid filing fees due from previous cases a condition of eligibility to file new cases. This omission is particularly noteworthy in light of the recent overhaul of the Bankruptcy Code, which was preceded by a number of years of repeated efforts to make major amendments to the Code, a primary goal of which is generally understood to have been dealing with perceived bankruptcy abuses, principally by debtors. Indeed the very title of that legislation, The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, provides ample evidence of Congressional intent to deal decisively with bankruptcy abuse. That Act included adding additional eligibility requirements for consumer bankruptcy debtors in § 109 of the Code, most notably a requirement of pre-filing credit counseling, but made no mention of any requirement to pay filing fees from prior cases. Furthermore, Congress specifically considered the problem of repeat bankruptcy filers with respect to the imposition of the automatic stay by either limiting the

duration of the stay or eliminating it altogether in subsequent bankruptcy cases filed within twelve months of one or more prior cases. *See* 11 U.S.C. § 362(c)(3), (4).

2. In BAPCPA Congress expressly provided an exception in 11 U.S.C. § 523(a)(17) to the general effect of a discharge under § 727 of the Code for court fees, but limited such exception to fees "imposed on a prisoner by any court for the filing of a case, motion, complaint, or appeal, or for other cost and expenses assessed with respect to such filing, regardless of an assertion of poverty by the debtor." *Id*. While this exception appears intended to deal with a prisoner's responsibility for court costs and fees incurred generally and not with particular reference to bankruptcy court fees, its inclusion is evidence that Congress explicitly dealt with the issue of non-dischargeability of court costs incurred by one category of bankruptcy debtors, prisoners.

3. Even prior to the enactment of BAPCPA bankruptcy courts had the power to dismiss bankruptcy cases with prejudice or with restrictions upon the debtor's refiling pursuant to the authority granted in 11 U.S.C. § 349(a).[4] This provision clearly empowers bankruptcy courts to

---

[4] The relevant language of § 349 reads:
> Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

11 U.S.C. § 349(a). The Code also authorizes the court to prevent an abuse of process in § 105(a), which states:
> No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

deny a debtor from obtaining a discharge of debts in a subsequent case which were included in the filing of the case being dismissed and that surely would extend to liability for costs incurred to the court in the dismissed case. It also authorizes bankruptcy courts to impose restrictions upon the filing of new cases not inconsistent with the restriction provisions imposed in § 109(g) of the Code. This has been interpreted, as noted elsewhere in this opinion, to authorize the imposition of a restriction upon refiling in excess of the 180 day preclusion provided for in § 109(g).

    4. The only express remedy provided to bankruptcy courts by the Bankruptcy Code to deal with unpaid case filing fees is to dismiss the bankruptcy case. *See* 11 U.S.C. §§ 707(a)(2), 1112 (b)(1), (4)(K), 1307(c)(2). The Court has not found any indication in the Code that Congress made any express declaration that a debtor whose case has been dismissed by reason of failure to pay the filing fee is thereby relieved of the obligation to pay such fee incurred when the case was filed. Therefore, the apparent consequence is that there is a double sanction for failure to pay an un-waived filing fee, dismissal of the case as well as continuing liability for the payment of such fee.

    5. Congress included a section in BAPCPA that amended 28 U.S.C. § 1930 and allowed bankruptcy court judges to waive the filing fees for chapter 7 debtors unable to pay them. *See* H.R. Rep. No. 31, 109th Cong., 1st Sess. 418 (2005). It reads as follows:

> Under the procedures prescribed by the Judicial Conference of the United States, the district court or the bankruptcy court may waive the filing fee in a case under chapter 7 of title 11 for an individual if the court determines that such individual has income less than 150 percent of the income official poverty line (as defined by the Office of Management and Budget, and revised annually in accordance with section 673(2) of the Omnibus Budget Reconciliation Act of 1981) applicable to a family of the size involved and is unable to pay that fee in installments.

28 U.S.C. § 1930(f)(1). To rule that the Debtor could never file any future bankruptcy petition

without first paying not only the new case filing fee but also unpaid filing fees from prior cases, no matter what her then financial circumstances, mental intent, and purpose might be, would seem to fly in the face of the Congressional determination that bankruptcy relief should not be denied to debtors filing in good faith under chapter 7 who do not have the ability to pay filing fees without materially and adversely impacting their necessary basic support of themselves and their dependents. It might well be that even as pronounced a serial filer as Ms. Fenderson appears to be might at some future time have a desperate need for chapter 7 bankruptcy relief but not have the financial ability to satisfy her financial obligations to the court. The Court doubts that it should declare, in effect, any debtor to be beyond redemption when other remedies exist to deter future filings commenced for an improper purpose.

Under the facts of this case and the previous cases filed by the Debtor, of which four were filed after the effective date of BAPCPA, in none of which the Debtor had obtained the required pre-filing debtor counseling and therefore was eligible to file, her liability for unpaid filing fees for all filings subsequent to the initial filing after BAPCPA, when the credit counseling requirement was first brought to the Debtor's attention, should survive any subsequent bankruptcy filing. That is to say, using the language of § 349(a), that any new case filed shall be with prejudice to her liability for the filing fees incurred in such indicated cases.

The Court further concludes, based on the reasoning expressed above, that the best and fairest method to deter Ms. Fenderson from filing new bankruptcy petitions for an improper purpose, without taking from her the right granted by statute to file and have considered an application for the waiver of the filing fee in some future case for which she may not have at that time the financial means to pay such fee, is to rule that no automatic stay shall arise in any subsequent case filed by or on behalf of Ms. Fenderson in this Court more than twelve months

hence, but within ten years from this date, unless and until either any fees incurred by reason of such filing are paid in full or the Debtor obtains from this Court a waiver of such fee pursuant to the authority provided in 28 U.S.C. § 1930(f). A provision to such effect shall be included in the order dismissing the current case.

## CONCLUSION

Based upon the above authorities and reasoning, the Court concludes that the United States Trustee's Motion to Dismiss Case with Prejudice and to Bar Future Filings ought to be granted insofar as it seeks to prohibit any new bankruptcy petition filing by the Debtor within twelve months of the date of entry of the dismissal order for this case and to impose the condition that any new case commenced thereafter shall be with prejudice as to Ms. Fenderson's liability for incurred filing fees in the current case and the two preceding cases. Furthermore, no automatic stay shall arise in any case filed in this Court after such twelve month period, but within ten years of the date of such dismissal order, unless and until all fees incurred by reason of any such filing shall have been paid in full or the Debtor shall have obtained from the Court an order waiving the payment of such fees. An order to such effect will be entered contemporaneously herewith.

This the 25th Day of October, 2007.

_____
UNITED STATES BANKRUPTCY JUDGE